UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JACKELINE R. HALL,<br><br>               Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>               Defendant. | No. ED CV 09-1719-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 17, 2009, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 15, 2009, and October 23, 2009. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 4, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on February 11, 1977. [Administrative Record ("AR") at 58, 116.] She has an eleventh grade education and past work experience as a cashier, tour guide, waitress, swap meet worker, and babysitter. [AR at 75-76, 80, 102-07.]

On April 23, 2004, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since July 1, 2003, due to, among other things, migraines, lower back injury, lupus, mental impairment, and hand and wrist problems. [AR at 58-61, 74-81, 109.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 21-34.] A hearing was held on November 27, 2006, at which plaintiff appeared with counsel and testified on her own behalf. A medical expert and a vocational expert also testified. [AR at 695-714.] On February 23, 2007, the ALJ determined that plaintiff was not disabled. [AR at 9-18.] The Appeals Council denied plaintiff's request for review of the hearing decision on August 13, 2007. [AR at 4-7.] Subsequently, plaintiff filed a complaint in this Court in Case No. ED CV 07-1264-PLA. On May 29, 2008, pursuant to a stipulation for voluntary remand entered between the parties, judgment was entered remanding the case to defendant for further proceedings. [See AR at 727-30.] On remand, the ALJ held a hearing on January 29, 2009, at which plaintiff appeared with counsel and again testified on her own behalf. Plaintiff's husband and a vocational expert also testified. [AR at 1112-42.] On May 22, 2009, the ALJ issued an opinion again finding plaintiff not disabled. [AR at 715-24.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

2

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff has not engaged in any substantial gainful activity since April 23, 2004, the date of her application for Supplemental Security Income payments. [AR at 720.] At step two, the ALJ concluded that plaintiff "has a severe impairment in the cardiovascular, neurological and musculoskeletal systems as well as a very questionably severe impairment from a mood disorder." [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff has retained the following residual functional capacity ("RFC")[1]: plaintiff can lift and/or carry 20 pounds occasionally and ten pounds frequently; can sit, stand, and walk each for three hours at a time and each for a total of six hours in an eight-hour workday; must use a cane to ambulate for distances greater than 100 feet; can, without a cane, use her free hand to carry small objects; can frequently reach, handle, finger, feel, push, and pull with both hands; can

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

frequently use both of her feet to operate foot controls; can frequently climb stairs and ramps, stoop, kneel, crouch, and crawl; can occasionally climb ladders or scaffolds and balance; can never be exposed to unprotected heights or dangerous unguarded moving machinery or work in similar hazardous environments; can frequently be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration; can be exposed to a moderate amount of noise (i.e., noise found in an office setting); cannot walk a block at a reasonable pace on rough or uneven surfaces; and mentally is "capable of simple, routine, repetitive nonpublic tasks." [AR at 720, citing AR at 1041-46.] At step four, the ALJ concluded that plaintiff has no past relevant work. [AR at 723.] At step five, the ALJ found, based on the vocational expert's testimony, that there are a significant number of jobs in the national economy that plaintiff is capable of performing. [AR at 724.] Accordingly, the ALJ determined that plaintiff is not disabled. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) consider the state agency physician's opinion; (2) consider the treating doctors' opinions; (3) comply with the Appeals Council's remand order; (4) consider the lay witness testimony; (5) consider the state agency physician's findings regarding plaintiff's restriction to occasional handling; and (6) pose a complete hypothetical to the vocational expert. [Joint Stipulation ("JS") at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.     MEDICAL EVIDENCE**

Plaintiff contends that the ALJ failed to properly consider the opinions of nonexamining physicians Dr. Narsa S. Haroun and Dr. Franklin Kalmar and the opinions of treating physicians Dr. Jesse Jacques and Dr. C. Krishna Murthy. [See JS at 3-4, 6-9, 17-18.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); Social Security Ruling[2] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

The Regulations provide that although ALJs "are not bound by any findings made by [nonexamining] State agency medical or psychological consultants, or other program physicians or psychologists," ALJs must still "consider [their] findings and other opinions ... as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled," because such specialists are regarded as "highly qualified ... experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). The Regulations further provide that "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant

---

[2] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  or other program physician, psychologist, or other medical specialist."  20 C.F.R. §§
2  404.1527(f)(2)(ii), 416.927(f)(2)(ii).  See also SSR 96-6p ("Findings ... made by State agency
3  medical and psychological consultants ... regarding the nature and severity of an individual's
4  impairment(s) must be treated as expert opinion evidence of nonexamining sources," and ALJs
5  "may not ignore these opinions and must explain the weight given to these opinions in their
6  decisions.").

7  Plaintiff's treatment records reflect that she was treated by Dr. Jacques, a physician with
8  Family Practice Associates, from at least July 2006 to January 2009.  [See AR at 754-74, 816-18,
9  1056, 1083-93.]  On November 29, 2006, Dr. Jacques completed a Medical Opinion Re: Ability
10 to Do Work-Related Activities (Physical) form, in which he opined that plaintiff could lift less than
11 ten pounds; could stand and walk for less than two hours in an eight-hour day; could sit for less
12 than two hours in an eight-hour day; could stand and sit for five minutes each at one time before
13 needing to change positions; needed to be able to shift positions at will from sitting or
14 standing/walking; would need to lie down many times and at unpredictable intervals during a
15 workday; could occasionally twist, stoop, crouch, climb stairs, and climb ladders; was limited in
16 her abilities to reach, handle, finger, feel, and push/pull; needed to avoid concentrated exposure
17 to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dust, gases, poor
18 ventilation, and work hazards; and would be absent from work more than three times a month due
19 to her impairments.  [AR at 681-83.]  On June 29, 2008, Dr. Jacques completed a second Medical
20 Opinion Re: Ability to Do Work-Related Activities (Physical) form, expressing nearly all of the same
21 limitations described in the 2006 Medical Opinion form, except that he opined that plaintiff could
22 sit and stand for 15 minutes each before needing to change position; would need to lie down at
23 work three to four times during a workday; could never twist or climb ladders; and should avoid
24 even moderate exposure to wetness, humidity, noise, fumes, odors, dust, gases, poor ventilation,
25 and work hazards.  [AR at 1063-65.]

26 Plaintiff's treatment records also reflect that she was treated by Dr. Murthy, a doctor from
27 County of San Bernardino Department of Behavioral Health, from at least January 2005 to October
28 2008.  [See AR at 583-609, 833-56, 1067-80.]  On December 5, 2006, Dr. Murthy completed a

7

Medical Opinion Re: Ability to Do Work-Related Activities (Mental) form, in which he opined that plaintiff was "[s]eriously limited, but not precluded"[3] in her abilities to remember work-like procedures; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruption from psychologically based symptoms; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; deal with stress of semiskilled and skilled work; and interact appropriately with the general public. [AR at 685-86.] Dr. Murthy further opined that plaintiff is "[u]nable to meet competitive standards"[4] in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. [AR at 685.]

On September 25, 2007, nonexamining physician Dr. Kalmar completed a Physical Residual Functional Capacity Assessment form, in which he opined that plaintiff can lift and/or carry ten pounds occasionally and less than ten pounds frequently; can stand and/or walk at least two hours in an eight-hour workday; can sit for about six hours in an eight-hour workday; can occasionally climb, stoop, kneel, and crawl; can never balance; is limited in her ability to handle (i.e., with gross manipulation); and is limited to occasional use of her left wrist. [AR at 789-93.]

In the decision, the ALJ asserted "[t]here are a number of residual functional capacity forms submitted from Family Practice Associates which have no persuasive value at all." [AR at 723.] In rejecting these forms, the ALJ contended that they were "egregiously accommodative, indulgent and exaggerated in their assessed limits and in asserting [plaintiff] can basically do nothing of any productive value," and found them to be rebutted by the opinions and findings of the consultative

---

[3] The Medical Opinion form states that "[s]eriously limited, but not precluded means ability to function in this area is seriously limited and less than satisfactory, but not precluded. This is a substantial loss of ability to perform the work-related activity." [AR at 685.]

[4] The Medical Opinion form states that "[u]nable to meet competitive standards means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." [AR at 685.]

examiners and state agency physicians. [AR at 723.] Assuming that the ALJ was rejecting Dr. Jacques' opinions when rejecting the Family Practice Associates' forms,[5] the Court finds that the ALJ failed to provide proper reasons for doing so. First, the ALJ's assertion that Dr. Jacques' opinion was "egregiously accommodative, indulgent and exaggerated" is inadequate to reject his treating opinion, as the ALJ points to no evidence of any actual impropriety on the part of Dr. Jacques. See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (quoting Ratto v. Sec'y, Dept. of Health and Human Services, 839 F.Supp. 1415, 1426 (D. Or. 1993)); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996), cert. denied, 519 U.S. 1113 (1997)). The record contains no evidence that Dr. Jacques embellished his assessment of plaintiff's limitations in order to assist her with her benefits claim. See Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998) (holding that the ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient). Thus, the ALJ's statement that Dr. Jacques' opinion was accommodative and exaggerated is not valid support for his rejection of that opinion. See, e.g., Fajardo v. Astrue, 2010 WL 273168, at *4 (C.D. Cal. Jan. 14, 2010) (ALJ improperly rejected a treating physician's opinion as "accommodative and exaggerated" and "hyperbolic," where the ALJ showed no evidence of actually impropriety on the part of the treating physician).

Second, although contrary medical opinions based on independent clinical findings may constitute substantial evidence upon which the ALJ may rely in evaluating the weight to afford a treating physician's opinion (see Andrews, 53 F.3d at 1041), the ALJ may not properly reject a treating physician's opinion by merely referencing the contrary findings of another physician. Even when contradicted, a treating physician's opinion is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. See

---

[5] It appears that the ALJ and plaintiff stipulated at the 2009 hearing that Dr. Jacques authored the November 2006 and June 2008 Medical Opinion forms identified by plaintiff in the Joint Stipulation. [See JS at 6 n.2, citing AR at 1139-40.]

9

1 Orn, 495 F.3d at 632-33; SSR 96-2p; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d
2 685, 692 (9th Cir. 2009) ("to reject the opinion of a treating physician 'in favor of a conflicting
3 opinion of an examining physician[,]' an ALJ still must 'make[] findings setting forth specific,
4 legitimate reasons for doing so that are based on substantial evidence in the record'") (quoting
5 Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)). Here, the ALJ erred in failing to expressly
6 explain how Dr. Jacques' findings conflicted with other parts of the medical evidence and why his
7 opinion was rejected in favor of conflicting opinions of the consultative examiners and state agency
8 physicians. The ALJ's rejection of Dr. Jacques' opinion without expressly setting forth detailed,
9 legitimate reasons for doing so was improper. See Hostrawser v. Astrue, 364 Fed.Appx. 373, 376-
10 77 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (ALJ erred
11 in affording non-treating physicians' opinions controlling weight over the treating physicians'
12 opinions, where the ALJ did not provide a thorough summary of the conflicting clinical evidence
13 and his interpretations thereof with an explanation as to why his interpretations of the evidence,
14 rather than those of the treating physicians, were correct).

15 Next, although the ALJ mentioned Dr. Murthy in the decision, and stated that neither he nor
16 the nonexaming physicians received a response from Dr. Murthy when they apparently tried to
17 contact him to clarify his findings [see AR at 722], the ALJ in the decision did not expressly
18 address the mental limitations assessed by Dr. Murthy, state the weight he afforded his findings,
19 or provide any reasons (let alone specific and legitimate reasons) for rejecting his opinion.
20 Because the ALJ did not include Dr. Murthy's assessment of plaintiff's mental limitations in the
21 RFC determination, it appears that the ALJ implicitly rejected these findings without providing any
22 reason for doing so. This constitutes error because the ALJ did not provide specific and legitimate
23 reasons based on substantial evidence in the record, as is required for rejecting the findings of a
24 /
25 /
26 /
27 /
28 /

treating physician.[6] Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

Similarly, the ALJ in the decision did not expressly consider the opinion of Dr. Kalmar. As portions of the ALJ's RFC determination appear to conflict with Dr. Kalmar's opinion that plaintiff can lift at most ten pounds, can never balance, is limited in her ability to handle, and is limited to occasional use of her left wrist, it appears that the ALJ also implicitly rejected these aspects of his opinion. This too constitutes error. See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-8p, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (finding that an ALJ's failure to explain why he disregarded medical evidence, including the opinions of treating physicians and a nonexamining state agency physician, prevented "meaningful judicial review"). The ALJ's failure to expressly explain why he apparently rejected and did not include in the RFC determination the findings of Dr. Murthy and Dr. Kalmar as discussed above prevents meaningful judicial review. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that ... [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir.

/
/
/

---

[6] To the extent the ALJ intended to reject Dr. Murthy's opinion for the same reasons that he provided for rejecting the forms submitted by the Family Practice Associates physicians [see AR at 723, 1139 (ALJ during the 2009 administrative hearing referring to Dr. Murthy as a Family Practice Associates physician)], as stated above, those reasons were insufficient to reject the opinion of a treating physician. As with Dr. Jacques, the ALJ failed to show any impropriety on the part of Dr. Murthy (Nguyen, 100 F.3d at 1465 ), and did not make findings setting forth specific, legitimate reasons for rejecting Dr. Murthy's opinion in favor of conflicting opinions of the examining or nonexamining physicians. Orn, 495 F.3d at 632-33.

1981) (internal citation omitted). Remand is warranted so that the ALJ can properly consider Dr. Jacques', Dr. Murthy's, and Dr. Kalmar's findings.[7]

**B.    LAY WITNESS TESTIMONY**

Plaintiff contends that the ALJ improperly rejected the lay witness statements and testimony of her husband, Michael Hall. [See JS at 11-16.]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect her ability to work. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen, 80 F.3d at 1289 (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of particular value); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("An eyewitness can often tell whether someone is suffering or merely malingering. ... [T]his is particularly true of witnesses who view the claimant on a daily basis."). The ALJ may discount the testimony of lay witnesses only for "reasons that are germane to each witness." Dodrill, 12 F.3d at 919; Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

---

[7] Since the Court finds remand appropriate for further consideration of Dr. Jacques', Dr. Murthy's, and Dr. Kalmar's opinions, the Court exercises its discretion not to decide whether the ALJ also failed to adequately consider the opinion of nonexamining physician Dr. Haroun.
 To the extent defendant contends that the ALJ properly rejected the opinions of Dr. Jacques, Dr. Murthy, Dr. Kalmar, and/or Dr. Haroun just because some of their opinions are dated prior to the Court's remand order in Case No. ED CV 07-1264-PLA or because there are more recent medical opinions in the record [see JS at 5, 9-10, 18], this contention fails. As all of these physicians' contested opinions are dated after plaintiff's April 2004 application for Supplemental Security Income payments, their opinions are relevant to the disability determination in this case and thus must be considered by the ALJ.

On June 22, 2004, Mr. Hall completed a Function Report Adult Third Party form, in which he opined, among other things, that plaintiff is limited in her ability to use her hands; she can walk no longer than 15 to 20 minutes at a time; cleaning chemicals make her head hurt; her symptoms sometimes prevent her from being able to go out alone; she is unsure of herself; she gets nervous; her mental illness impacts the degree to which she is able to socialize such that "when she [is] sick[,] she[']s not social at all;" she handles stress poorly; she can only lift ten pounds; she has difficulty concentrating and following instructions; and she is "sick almost every day with migra[i]nes." [AR at 85-93.] Mr. Hall testified at the January 2009 hearing that he had been married to plaintiff for 12 years, and that due to her impairments, she is "not the same person [he] married." [AR at 1124-25, 1133.] In describing plaintiff's physical limitations, he testified that plaintiff is "[a]lways weak" and "very limited," requiring him to do virtually all of the cooking and housework, and that her symptoms have been "severe" since April 2004. [AR at 1125-26.] Mr. Hall explained that since 2006, he had accompanied his wife to the emergency room approximately 20 times, mostly for her migraines. [AR at 1127-28.] He also testified that due to plaintiff's "mood swings" she sometimes has a very negative attitude that makes it difficult for her to be out in public or around extended family. He said that plaintiff spends a lot of time sleeping or in bed, which he attributes to her mental illness, is often depressed, and sometimes hears or sees things that are not there and has conversations with herself. [AR at 1128-34.]

In the decision, the ALJ asserted that he rejected Mr. Hall's testimony on the basis that he was "motivated by the relationship and by financial gain of significantly increasing family income." [AR at 723.] The ALJ's rejection of Mr. Hall's statements and testimony on the basis that he is financially or otherwise interested in plaintiff's receipt of benefits was improper because such a basis for rejection would result in "a wholesale dismissal of the testimony of all witnesses" related to and living with a claimant, which would undermine the assumption that lay testimony from witnesses who see a claimant every day, like spouses and other family members, "is of particular value." Smolen, 80 F.3d at 1289; see Valentine, 574 F.3d at 694 (stating that it was improper for the ALJ to reject a spouse's testimony on the basis that she was an interested party because it contradicts the tenet that family members are competent witnesses). Although plaintiff's husband

13

may benefit financially to some extent if plaintiff receives Supplemental Security Income payments, such an assumed benefit, by itself, is an insufficient reason for discrediting his statements and testimony.[8] See, e.g., Traister v. Astrue, 2010 WL 1462118, at *4 (C.D. Cal. April 13, 2010) (ALJ improperly rejected the lay testimony of a plaintiff's boyfriend based on an assumption that he had an emotional and financial motivation to help the plaintiff obtain disability benefits); Daniels v. Astrue, 2010 WL 1931264, at *7 (C.D. Cal. May 12, 2010) (holding that the ALJ erred when he discounted a lay witness' testimony on the bases of bias and having an interest in the outcome). Remand is warranted on this issue.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to reconsider the opinions of Dr. Jacques, Dr. Murthy, and Dr.

---

[8] Relying on Valentine, 574 F.3d at 693-94, defendant contends that because Mr. Hall's statements and testimony were similar to plaintiff's testimony concerning her impairments, and plaintiff does not challenge the ALJ's rejection of her credibility, the ALJ likewise properly rejected Mr. Hall's statements and testimony. [See JS at 13-14, 16-17.] Respondent's contention is unavailing. In Valentine, unlike in this case, the ALJ expressly stated that he rejected a lay witness' testimony for the same reasons that he had rejected the plaintiff's testimony. See 574 F.3d at 693-94. Here, the only reason provided by the ALJ for rejecting Mr. Hall's statements and testimony was his assumed interest in ensuring plaintiff's receipt of benefits. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Services, 933 F.2d 735, 738 (9th Cir. 1991); see also Barbato v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1276 n.2 (C.D. Cal. 1996) ("the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision" and "[i]f the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for remand") (citation omitted). Accordingly, this Court cannot find under Valentine that the ALJ's rejection of Mr. Hall's statements and testimony was proper just because the ALJ also rejected plaintiff's credibility. See Butler v. Astrue, 2010 WL 2816971, at *11 (E.D. Cal. July 16, 2010) (court rejecting the Commissioner's argument that the ALJ properly rejected lay witness testimony by properly rejecting the plaintiff's similar testimony, where the ALJ did not cite such a basis for rejecting the lay testimony).

Kalmar, and to reconsider the lay statements and testimony of Mr. Hall.[9]  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: December 8, 2010

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[9] As remand is warranted on these grounds, the Court will not address plaintiff's remaining contentions of error.